UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SHAGHAYEGH MOSTOFI<br><br>    Plaintiff,<br><br>  v.<br><br>JANET NAPOLITANO, et al.<br>Secretary of the Department of Homeland<br>Security of the United States,<br><br>    Defendants. | Civil Action No. 11-0727 (ESH) |

## MEMORANDUM OPINION

Plaintiff Shaghayegh Mostofi, a United States citizen, has sued the Secretary of the Department of Homeland Security, the Secretary of State, and the Consul General at the United States Consulate in Sydney, Australia alleging that defendants' refusal to issue her alien husband, Shahriar Aghakhani, an immigrant visa violated her First Amendment right to "freedom of personal choice in matters of marriage and family life" (Compl. ¶ 29) and Fifth Amendment constitutional right to "fundamental fairness in administrative adjudication." (Id. ¶¶ 47-48.)

Defendants have moved to dismiss on the grounds that this Court lacks subject matter jurisdiction based on the doctrine of consular nonreviewability. For the reasons set forth below, defendants' motion to dismiss is granted.

### BACKGROUND

Plaintiff Shaghayegh Mostofi, a naturalized American citizen, married Iranian citizen Shahriar Aghakhani on August 20, 2008, in Tehran, Iran. Aghakhani had previously been denied

an immigrant visa to the United States in 2002 and 2004.  On September 17, 2008, Mostofi filed an I-130 Petition for Alien Relative with the United States Citizenship and Immigration Services ("USCIS") on Aghakhani's behalf.  On October 1, 2008, Mostofi filed an I-129F Petition for Fiancé(e) with the USCIS, also on Aghakhani's behalf.[1]  During the pendency of the two petitions, Mostofi lived in the Cincinnati area while Aghakhani lived in Australia.  Following a Federal Bureau of Investigation interview with Mostofi regarding Aghakhani, the USCIS approved the I-130 petition on August 24, 2009, and the I-129F petition on January 11, 2010.  As part of the continuing process of obtaining an immigrant visa, Aghakhani attended a March 16, 2010 interview at the United States Consulate in Sydney, Australia.

On April 14, 2010, the Immigrant Visa Chief of the United States Consulate General in Sydney denied Aghakhani's visa application stating:

> At this time, we have received a response from the Department of State in your case, and we are unable to issue you an immigrant visa.  Your case is being refused under Section 212(a)(3) of the Immigration and Nationality Act.  There is no waiver available for this ineligibility for an immigrant visa.

(Compl. Ex. F.)  Section 212(a)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(3), allows exclusion of a visa applicant from the United States on any of six security and related grounds.  No communication with Mostofi or Aghakhani from immigration authorities indicated which subsection of the statute applied to Aghakhani's visa denial.  An inquiry with consular officials regarding Aghakhani's visa denial initiated by United States Senator George Voinovich of Ohio ended when Senator Voinovich received a letter restating the same INA

---

[1] Approved I-130 and I-129F petitions classify an alien as an immediate relative or fiancé(e) of a United States citizen or permanent resident, but are not alone grounds for entry into the United States.  (*See* Compl. Ex. E.)

Section 212(a)(3) grounds for refusing Aghakhani's entry. (Compl. Ex. G.)  Mostofi moved to Australia in late 2010 to live with Aghakhani.

On April 14, 2011, Mostofi filed a Petition for a writ of mandamus pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* (Compl. ¶¶ 2, 40).  Plaintiff seeks a declaration that Aghakhani's exclusion from the United States was "not based on a facially legitimate and bona fide reason" and that his exclusion violates the APA; a writ of mandamus compelling defendants to review their refusal of Mostofi's application for Aghakhani's visa and to identify the facts, evidence, and statutory subsections that underlie the refusal of Aghakhani's visa; and injunctive relief granting Aghakhani permanent residency status and compelling the issuance of an immigrant visa. (Compl. ¶¶ 43, 56).

## STANDARD OF REVIEW

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction.  See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A court must accept as true all factual allegations in the complaint, and give plaintiff the benefit of all reasonable inferences from the facts alleged.  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, a court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  In considering the sufficiency of a plaintiff's allegations for this purpose, a court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## ANALYSIS

A consular officer's decision to deny a visa is generally not subject to judicial review, for as Justice Harlan stated in *Lem Moon Sing v. United States*:

> The power of Congress to exclude aliens altogether from the United States or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard enforced exclusively through executive officers without judicial intervention, is settled by our previous adjudications.

158 U.S. 538, 547 (1895); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."); *Shaughnessy v. United States ex rel. Menzei*, 345 U.S. 206, 210 (1953) ("Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Bruno v. Albright*, 197 F.3d 1153, 1156-57, 1162 (D.C. Cir. 1999) (the INA grants consular officials "exclusive authority" to review visa applications, and thus, the APA does not permit judicial review of consular visa decisions); *Udugampola v. Jacobs*, 795 F. Supp. 2d 96, 102 (D.D.C. 2011) ("The power to control entry into the United States is exercised exclusively by the political branches of government and judicial review of such matters is extremely limited.") (internal citations and quotations omitted).

This established doctrine of "consular nonreviewability" is far-reaching. *See Chun v. Powell*, 223 F. Supp. 2d 204, 206 (D.D.C. 2002) (consular nonreviewability applicable even where consular officer failed to follow regulations or made decision based on factual or legal error). However, in *Kliendienst v. Mandel*, 408 U.S. 753 (1972), the Supreme Court opened the door to limited review of consular decisions. In rejecting a First Amendment challenge by U.S.

citizens to the denial of a visa waiver for a Belgian journalist who was scheduled to speak at several American universities, the Court held that "when the Executive exercises this power [to deny a waiver] on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." *Id.* at 770.

Presented with facts similar to *Mandel*, the D.C. Circuit noted that it had jurisdiction to conduct limited review because "presumably, had the [Supreme] Court harbored doubts concerning federal court subject matter jurisdiction in *Mandel*, it would have raised the issue on its own motion." *Abourezk v. Reagan*, 785 F.2d 1043, 1050 (D.C. Cir. 1986) (hereinafter "*Abourezk II*"). In this manner, the D.C. Circuit joined the First, Second, and Ninth Circuits in authorizing limited inquiry into the facial legitimacy of and bona fide reason for a consular decision when the plaintiff asserts that the decision infringes upon constitutional rights. *See Abourezk II*, 785 F.2d at 1061 (executive discretion in consular affairs cannot "transgress constitutional limitations"); *see also Udugampola*, 795 F. Supp. 2d at 103 (*Abourezk II* created an exception to consular nonreviewability "where a U.S. citizen or legal resident plaintiff asserts that the visa decision violates a constitutionally protected liberty interest"). However, this Court still lacks jurisdiction to review a consular officer's denial of a visa application when the denial fails to adversely implicate any interest protected by the Constitution. *See Bruno*, 197 F.3d at 1163-64 (no subject matter jurisdiction where plaintiffs asserted no constitutional claims); *Udugampola*, 795 F. Supp. 2d at 103 (same).

Plaintiff argues that the denial of Aghakhani's visa implicates her constitutional rights, justifying limited review of the consular decision in this case. (Compl. ¶¶ 29, 47-48; Pl.'s Opp'n

at 7.) She asserts that the defendants' actions violate her Fifth Amendment rights because those actions deprived her of a constitutionally protected liberty interest in "freedom of personal choice in matters of marriage and family life" without due process. (Compl. ¶¶ 29, 47-48.) The Constitution certainly protects "freedom of personal choice in matters of marriage and family life," as well as the rights to marry and to marital privacy. *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639 (1973); *see also Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citing *Loving v. Virginia*, 388 U.S. 1 (1967)) ("[T]he 'liberty' specially protected by the Due Process Clause includes the right[] to marry . . . ."); *Griswold v. Connecticut*, 381 U.S. 479, 495 (1965) ("The entire fabric of the Constitution and the purposes that clearly underlie its specific guarantees demonstrate that the rights to marital privacy and to marry and raise a family are of similar order and magnitude as the fundamental rights specifically protected.").

However, plaintiff's constitutional rights are not implicated by defendants' decision to deny her alien spouse entry into the United States. *See Swartz v. Rogers*, 254 F.2d 338, 339 (D.C. Cir. 1958) (citizen wife has no constitutional rights violated by deportation of husband); *Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006) (citing *Almario v. Attorney General*, 872 F.2d 147, 151 (6th Cir. 1989)) ("A denial of an immediate relative visa does not infringe upon [plaintiffs'] right to marry."); *Burrafato v. U.S. Dep't of State*, 523 F.2d 554, 554-55 (2d Cir. 1975) (no subject matter jurisdiction over claim that denial of alien husband's visa "without reason" violated citizen wife's constitutional rights). In response, plaintiff argues that *Bustamante v. Mukasey*, 531 F.3d 1059 (9th Cir. 2008), supports her contention that defendants' decision to deny Aghakhani a visa implicates her constitutional rights. (Pl's. Opp'n at 10.) In *Bustamante*, a U.S. citizen wife alleged that consular denial of her alien husband's visa infringed on a right to "constitutionally adequate procedures in the adjudication of her husband's visa

application" arising from a "protected liberty interest in her marriage". 531 F.3d at 1062. The Ninth Circuit accepted this allegation at face value and invoked *Mandel* to review a consular decision without first considering whether the visa denial actually implicated the plaintiff's constitutional rights. *Id.* Plaintiff's reliance on *Bustamante* here is unavailing, for this Circuit, unlike the Ninth Circuit, does not recognize consular decisions affecting only the "physical conditions" of a marriage as implicating any constitutionally protected interests. *See Swartz*, 254 F.2d at 339; *see also Udugampola* 795 F. Supp. 2d at 105 (no jurisdiction even though plaintiff alleged a violation of constitutional "right to marry and the marital relationship" because the right is not infringed by consular denial of a visa).

Plaintiff attempts to distinguish *Swartz* by contending that it was limited to its facts and involved a deportation of a spouse already in the United States, rather than a denial of a visa to an alien. (Pl's. Opp'n at 9.) This argument is not persuasive. In *Swartz*, a U.S. citizen argued that her marriage afforded her Fifth Amendment protection against her husband's deportation. 254 F.2d at 339. In rejecting her argument, the Circuit concluded:

> [D]eportation would put burdens upon the marriage. It would impose upon the wife the choice of living abroad with her husband or living in this country without him. But deportation would not in any way destroy the legal union which the marriage created. The physical conditions of the marriage may change, but the marriage continues.

*Id.* Following the denial of Aghakhani's visa, plaintiff faced precisely the same choice as the wife in *Swartz*. Defendants' denial of Aghakhani's visa affected the "physical conditions of the marriage" between plaintiff and Aghakhani, but not the marriage itself.

Furthermore, plaintiff attempts to distinguish this case from *Swartz* by noting that, unlike Aghakhani, the deported husband in *Swartz* had been convicted of several crimes and had been given a chance to rebut the evidence against him. (Pl's. Opp'n at 9-10.) According to plaintiff,

while the process afforded the deported husband in *Swartz* may have satisfied the Fifth Amendment, the process afforded to Aghakhani in this case did not. This distinction ignores the requirement that the government must deprive plaintiff of some protected interest before her Fifth Amendment due process protections come into play. *See Gen Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (citing *Amer. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)) (government deprivation of a protected liberty or property interest is a prerequisite to successful procedural due process challenge). Because plaintiff's constitutional right to freedom of personal choice in marriage and family life is not implicated by defendants' actions, and she has failed to allege any other protected liberty or property interest upon which to base a due process argument, her Fifth Amendment claim must be rejected.

Defendants have not violated plaintiff's constitutionally protected right to freedom of personal choice in marriage and family life because they have "done nothing more than to say that the residence of one of the marriage partners may not be in the United States." *See Silverman v. Rogers*, 437 F.2d 102, 107 (1st Cir. 1970); *see also Escobar v. Immigration & Naturalization Service*, 700 F. Supp. 609, 612 (D.D.C. 1988) (citing *Swartz* for the proposition that "a citizen spouse has no constitutional right to have his or her alien spouse enter or remain in the United States."). Since plaintiff has not stated a valid constitutional claim, the doctrine of consular nonreviewability bars this Court from conducting even a limited *Mandel* review. *See Bruno*, 197 F.3d at 1163-64.[2]

---

[2] The four statutes which plaintiff relies upon — the general federal question statute, 28 U.S.C. § 1331, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, and the APA, 5 U.S.C. § 702 — do not give rise to jurisdiction where, as here, "plaintiff has no clear right to relief." *See Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 6 (D.D.C. 2009) (same four statutes do not confer jurisdiction without accompanying substantive cause of action).

## CONCLUSION

For these reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is granted.[3]  A separate order accompanies this Memorandum Opinion.[4]

　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　ELLEN SEGAL HUVELLE
　　　　　　　　　　　　　　　　　　　　United States District Judge

Date:   January 27, 2012

---

[3] Having reached the conclusion that this Court lacks jurisdiction to hear plaintiff's claims, the Court need not address defendants' alternative motion for failure to state a claim.

[4] Plaintiff's motion for leave to file a surreply will be granted, but her argument therein does not affect the outcome of this case because without subject matter jurisdiction, this Court cannot reach the substantive issues surrounding defendants' failure to cite reasons or a statutory subsection for the visa denial.